U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,

v.

J.P. STEVENS AND COMPANY, INC., Defendant.

No. C–88–538–R.

United States District Court, M.D. North Carolina, Rockingham Division.

July 5, 1990.

Regan A. Miller, Ronald J. Arrington, John H. Edmonds, Humphrey S. Cummings, E.E.O.C., Charlotte, N.C., Charles A. Shanor, Philip B. Sklover, E.E.O.C., Washington, D.C., for plaintiff.

Michael C. Landreth, Greensboro, N.C., Lovic A. Brooks, III, Columbia, S.C., Donald W. Benson, Edward Katze, Atlanta, Ga., Robin E. Shea Foremen, Winston–Salem, N.C., for defendant.

## MEMORANDUM OPINION

ERWIN, Chief Judge.

This matter came before the court for trial without a jury on April 5 and 6, 1990 at the United States Courthouse in Winston–Salem. After considering the testimony, the evidence, the trial briefs, and arguments of counsel, the court finds that three of the plaintiffs shall prevail on their claims; however, one plaintiff cannot prevail having failed to establish a *prima facie* case of religious discrimination. The parties stated before the commencement of trial that they would settle the issue of damages in the event that the court determined there was liability in this case. In light of that agreement, this opinion will only address the question of liability.

### Factual Background

The four plaintiffs in this case are Ms. Margaret McQueen, Mr. Willie Bryant, Jr., Mr. Roger Dial, and Mr. Furlin Carter. All were employees of the defendant J.P. Stevens and Company, Inc. at its Wagram, North Carolina plant. The plaintiffs were employed on the first shift in the distribution department of the plant. Prior to their termination, plaintiff McQueen was employed as a scales operator since 1961; plaintiffs Bryant and Carter were order fillers since 1975 and 1974 respectively; and plaintiff Dial was employed as an odds assorter since 1981.

Sometime in 1984, the defendant instituted a seven-day work week in an attempt to meet its increased product demands. At the onset of the seven-day schedule, the defendant asked for volunteers to work on Sundays; however, as the months progressed, there were weeks when entire departments were required to work on Sundays.

Each of the plaintiffs is a believer in the "Holiness" religious sect, although each attends a different church. As part of their beliefs, each plaintiff claims that working on Sundays is a violation of his or her personal religious tenets. Not only did the plaintiffs refuse to work, but they also shared the belief that to recruit someone else to work in their stead was also a sin.

The defendant's company policy does not allow religious observances to be classified as excused absences. As a result, an employee who does not wish to work for such a reason is required to either find his or her own replacement by utilizing the "swap system" or receive an unexcused absence. Four unexcused absences during a six-month period result in termination.

Upon the initiation of the seven-day work week, several employees commented that they would refuse to work on Sundays based on their religious beliefs. These employees were given unexcused absences for their failure to report for mandatory Sunday work. As time progressed, only the four plaintiffs in this action refused to work on Sundays enough times to earn them the four unexcused absences required for dismissal under the Stevens company policy.

Plaintiff Dial was terminated on November 4, 1985; plaintiff McQueen was terminated on November 5, 1985; plaintiff Carter in December 1985; and plaintiff Bryant on March 26, 1986.

This action was filed by the United States Equal Employment Opportunity Commission (EEOC) on June 2, 1988, alleging that the defendant discriminated against the four plaintiffs by refusing to reasonably accommodate their religious beliefs in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (West 1981).

### Discussion

■ Plaintiffs contend that their religious beliefs were violated by being required to work on their Sabbath, and further, by being required to secure a substitute to do something that they themselves considered to be a sin. In order to establish a *prima facie* case of religious discrimination under Title VII, one must first show (1) that he has a *bona fide* religious belief that conflicts with an employment requirement, (2) that he has informed the employer of this conflict, and (3) that he has been disciplined for failure to comply with the conflicting employment requirements. *Ansonia Board of Education v.*

*Philbrook,* 479 U.S. 60, 65, 107 S.Ct. 367, 370, 93 L.Ed.2d 305 (1986).

■ The evidence clearly shows that plaintiffs McQueen, Bryant, and Carter are able to cross this initial hurdle having established all three elements of a *prima facie* case. It is at this level, however, that the claim of plaintiff Roger Dial must fail. The court was originally concerned with the first element of the inquiry in relation to Mr. Dial's claim due to the fact that he stated at trial and in deposition testimony that the basis for his absences from Sunday work was "the way that he had been raised by his parents."

Upon further examination, however, the court has determined that it is the second element, not the first, that proves fatal to Mr. Dial. Mr. Dial has failed to fulfill the notification requirement. At trial, when asked on cross-examination, "You did not feel you should ask someone to work in your place, but you did not share that belief with management, did you?", Dial responded, "Not that I remember." Further, during his deposition, the following exchange took place:

Q You say you didn't feel right about it?

A No sir.

Q Did you express that feeling to anyone?

A I mentioned it to him (Joseph Barber, a fellow employee).

Q But you never said anything to the company about it?

A No.

(Dial Deposition p. 16.)

In light of this testimony, the court determines that Mr. Dial has failed to establish a *prima facie* case of religious discrimination, and there is no need to proceed further with the discussion of his claim.

### The Claims of McQueen, Bryant, and Carter

■ Having found that McQueen, Bryant, and Carter have established a *prima facie* case of religious discrimination, the inquiry now focuses upon whether Ste-

vens reasonably accommodated their religious beliefs as required by Title VII. Once the employee has established a *prima facie* case, the burden shifts to the employer to prove that it cannot reasonably accommodate the employee without undue hardship. *Anderson v. General Dynamics Convair Aerospace Division*, 589 F.2d 397, 401 (9th Cir.1978), *cert. denied*, 442 U.S. 921, 99 S.Ct. 2848, 61 L.Ed.2d 290 (1979).

■ The defendant relies heavily on the United States Supreme Court decision of *Ansonia Board of Education v. Philbrook*, 479 U.S. 60, 107 S.Ct. 367, 93 L.Ed.2d 305 (1986), for its proposition that the "swap system" utilized by the company was a reasonable accommodation. In *Ansonia* the court held: "We find no basis in either the statute or its legislative history for requiring an employer to choose any particular reasonable accommodation. By its very terms the statute directs that any reasonable accommodation by the employer is sufficient to meet its accommodation obligation." *Ansonia*, 479 U.S. at 68, 107 S.Ct. at 372.

The defendant would have this court believe that the decision stands for the premise that *any* accommodation offered by an employer would be sufficient. Nonetheless, this court is of the opinion that *Ansonia* does not stand for so harsh a premise and so determines that the facts of the present case do not necessarily allow for the defendant's offering of the "swap system" as a reasonable accommodation.

In this case, the plaintiffs involved felt that it was against their religious beliefs to solicit someone else to do something that they themselves believed to be a sin. Because this was their belief, the replacement system implemented by the defendant could not be reasonable under these circumstances.

The Court of Appeals for the Fourth Circuit has yet to address this specific issue. However, there is a case decided by the Court of Appeals for the Sixth Circuit with a remarkably similar set of facts. In *Smith v. Pyro Mining Co.*, 827 F.2d 1081 (6th Cir.1987), *cert. denied*, 485 U.S. 989, 108 S.Ct. 1293, 99 L.Ed.2d 503 (1988), the court addressed the specific question of whether an employer reasonably accommodates an employee by allowing the employee to arrange a shift swap himself when the employee considers it a sin to arrange such a swap.

In *Smith*, a former employee brought an action against the mining company after he was dismissed for failing to work on Sundays. As in the present case, the company offered employees the opportunity to trade shifts with other qualified co-workers if they objected to working on Sundays themselves. Also, like the plaintiffs in the present case, Smith refused to solicit replacements for Sunday work because he believed it to be a sin to do so. In the company's view, Smith's refusal to solicit a replacement constituted a failure on his part to cooperate with its efforts to accommodate his religious beliefs. He was subsequently dismissed for having received the requisite number of unexcused absences.

The Court of Appeals for the Sixth Circuit determined that it would not have been an undue hardship for the company to have solicited replacements for the plaintiff under those circumstances.

> Surely there would have been no undue hardship to the company had it simply posted a notice on the bulletin boards or in the company paper that the company was looking for someone willing to swap shifts with the plaintiff.... Pyro had the mechanism in place for soliciting replacements—namely the monthly newspaper and the bulletin boards.

*Smith*, 827 F.2d at 1089.

The court further held:

> We think it clear that if Smith had no religious qualms about asking others to work the Sundays he was scheduled to work, then Pyro's proposed accommodation would have been reasonable. However, where an employee sincerely believes that working on Sunday is morally wrong and that it is a sin to try to induce another to work in his stead, then an employer's attempt at accommodation

that requires the employee to seek his own replacement is not reasonable. *Id.* at 1088.

This court is of the opinion that the Court of Appeals for the Sixth Circuit's decision in *Smith* is highly persuasive in this case. The facts are virtually identical but for slight differences. These differences are, in this court's opinion, non-determinative in this case. In light of this, the court believes that Stevens' requirement that the plaintiffs secure their own replacements is a violation of their religious beliefs.

The court notes that in both the deposition and trial testimony, it was stated that managers at Stevens have at times attempted to secure replacements for other employees when the need arose. Further, the defendant's own managers stated that there are company bulletin boards already set up at plant locations where employees can view notices, etc. It appears to the court that, like in *Smith,* the mechanisms are already in place for the defendant to secure replacements for plaintiffs in this situation without undue hardship.

The court recognizes the concerns of the defendant that there may be a potential onslaught of employees who suddenly may not wish to secure their own replacements based on newfound religious beliefs. The court, however, is primarily concerned with the plaintiffs whose claims are presently before the court. All three plaintiffs testified at great length about their deeply held religious convictions. Secondly, Ms. McQueen was employed by the defendant for twenty-four years, and Mr. Bryant and Mr. Carter were employees of the defendant for eleven years. It stands to reason that employees with this amount of experience and seniority invested in a company would be unlikely to jeopardize their futures without believing strongly in their cause. To the contrary, all plaintiffs testified that they were willing to work double shifts on other days in order to avoid either having to work on their Sabbath or receiving an unexcused absence.

Moreover, until the defendant has actually put this practice into effect and experienced undue hardships, this court will not consider what potential effects may be felt. As the court quoted in *Smith:* "We are ... skeptical of hypothetical hardships that an employer thinks might be caused by an accommodation that never has been put into practice. The employer is on stronger ground when he has attempted various methods of accommodation and can point to hardships that actually resulted." *Smith,* 827 F.2d at 1085–86 (quoting *Draper v. United States Pipe & Foundry Co.,* 527 F.2d 515, 520 (6th Cir.1975)); *see also Edwards v. School Board of City of Norton, Va.,* 483 F.Supp. 620, 627 (W.D.Va.1980).

▋ The defendant in this case has failed to reasonably accommodate the religious beliefs of plaintiffs McQueen, Bryant, and Carter. In the case of plaintiff Bryant, the court finds it particularly noteworthy that the notice given to him in relation to his fourth unexcused absence was inadequate. Bryant gave uncontradicted testimony that he was told Saturday approximately five minutes before his shift was to start that he was required to work the next day. The court concludes that even if Bryant had been inclined to find a replacement for himself, this notice was insufficient under the circumstances for him to have done so.[1]

Under the particular circumstances of this case, the court finds that the defendant would not experience undue hardships by soliciting replacements for those plaintiffs who hold the sincere religious belief that soliciting replacements for themselves would be a sin.

### Conclusions of Law

1. The court has jurisdiction of this action pursuant to Title VII of the Civil Rights Act of 1964, *as amended by* 42

---

1. The court finds that the termination of Mr. Bryant, wholly apart from the issue of his securing replacements, was improper in that the notice given by the defendant on the occasion of his last scheduled Sunday of work was insufficient. Since that notice was improper, the court notes that he did not have the requisite number of unexcused absences sufficient to warrant termination.

U.S.C. § 2000e *et seq.* (West 1981) and 28 U.S.C. § 1341 (West 1976).

2.  J.P. Stevens and Company, Inc. is an employer as that term is defined by Title VII of the Civil Rights Act of 1964.

3.  J.P. Stevens and Company, Inc. did not violate Title VII of the Civil Rights Act of 1964 by terminating Mr. Roger Dial for having received four unexcused absences.

4.  J.P. Stevens and Company, Inc. did violate Title VII of the Civil Rights Act of 1964 by terminating Ms. Margaret McQueen, Mr. Willie Bryant, Jr., and Mr. Furlin Carter for having received four unexcused absences.

5.  Ms. McQueen is entitled to receive what she would have made as a scales operator from the time of her termination until the date of entry of this judgment offset by earnings received from other employment.

6.  Mr. Bryant is entitled to receive what he would have made as an order filler from the time of his termination until the date of entry of this judgment offset by earnings received from other employment.

7.  Mr. Carter is entitled to receive what he would have made as an order filler from the time of his termination until the date of entry of this judgment offset by earnings received from other employment.

8.  The evidence in this case calls for injunctive relief.

9.  Pursuant to their agreement which was articulated before commencement of trial, counsel are directed to agree on monetary damages associated with the claims of Ms. McQueen, Mr. Bryant, and Mr. Carter and to report to the court within thirty days of the entry of these findings of fact and conclusions of law.

10. Judgment will be deferred until the matter of damages is determined.